IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SHAWN AMMONS,

      Plaintiff,

v.                                          CV 18-1212 JHR

ANDREW SAUL,
Commissioner of Social Security,[1]

      Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff Shawn Ammons' Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 14], filed May 8, 2019. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to the undersigned Magistrate Judge resolving the Motion and entering final judgment. [Docs. 4, 6, 7]. For the following reasons, the Court grants Mr. Ammons' Motion and remands this case for further administrative proceedings.

### I.      INTRODUCTION

"Adherence to precedent is 'a foundation stone of the rule of law....' [I]t promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.'" *Kisor v. Wilkie*, 139 S. Ct. 2400, 2422 (2019) (quoting *Michigan v. Bay Mills Indian Community*, 572 U.S. 782, 798, (2014); *Payne v. Tennessee*, 501 U.S. 808, 827 (1991)). The Court finds itself

---

[1] Andrew Saul was automatically substituted as the Defendant in this action pursuant to Fed. R. Civ. P. 25(d) when he was sworn in as the Commissioner of Social Security on June 17, 2019, replacing former Acting Commissioner Nancy Berryhill.

bound by stare decisis in this case because it has already considered and ruled on two of the issues presented: (1) whether an ALJ's decision to restrict a claimant's residual function capacity ("RFC") to "simple work-related decisions with few workplace changes" precludes jobs at certain GED reasoning levels; and, (2) whether an ALJ must examine a claimant's ability to access the jobs identified at Step Five where the number of jobs relied on does not rise to the level of "significant numbers" in the national economy as a matter of law. Specifically, Mr. Ammons argues that the ALJ failed to comply with Social Security Ruling ("SSR") 00-4p because two of the jobs she employed to deny him benefits have General Education Development ("GED") reasoning levels of three (3), which is inconsistent with his RFC, leaving only 5,600 national jobs available to him. [*See* Doc. 14, p. 19]. Additionally, Mr. Ammons argues that, because the ALJ failed to identify a "significant" number of jobs available to him at Step Five, the Commissioner's decision to deny benefits is unsupported by substantial evidence because she did not analyze his ability to access the few jobs available to him as required by *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992). [*See* Doc. 14, pp. 18-19; Doc. 20, p. 5]. Having considered the Commissioner's arguments in opposition, reviewed the Administrative Record ("*AR*"),[2] and all pertinent authority (including this Court's own prior decisions), the Court agrees with Mr. Ammons that: (1) two of the jobs relied on by the ALJ to deny him benefits are inconsistent with his RFC, leaving an insufficient number of jobs (5,600) to meet the Commissioner's burden at Step Five under Tenth Circuit law; and, (2) even if these conflicts were ignored, the original number of jobs the ALJ identified (56,600) is not "significant" as a matter of law, meaning that she was required to examine Mr. Ammons' ability to access those jobs under *Trimiar*. Because she did not, the Court must reverse and remand the Final Decision of the Commissioner for further analysis. However, despite

---

[2] Documents 11-1 through 11-14 comprise the sealed Certified Transcript of the Administrative Record ("*AR*"). The Court cites the Record's internal pagination, rather than the CM/ECF document number and page.

these errors and the length of time Mr. Ammons' applications have been pending, the Court will not order an immediate award of benefits as requested because additional fact finding and the proper application of the law to those facts may yet result in a denial of benefits supported by substantial evidence.

## II.    **PROCEDURAL HISTORY**

Mr. Ammons applied for disability insurance benefits under Title II of the Social Security Act on February 14, 2013, and later for supplemental security income benefits under Title XVI of the Act on June 21, 2013. *AR* at 248-257. In support of his applications Mr. Ammons alleged a disability onset date of June 14, 2010, due to epilepsy, head injury, depression, arthritis, insomnia, gout, anxiety, memory problems, sleep apnea, issues with both of his feet and ankles, and right knee and shoulder problems. *See AR* at 248, 286. The Administration denied Mr. Ammons' applications initially and upon reconsideration, so he requested a de novo hearing before an ALJ. *AR* at 77-171.

ALJ Ann Farris ("the ALJ") held a hearing on October 20, 2015. *AR* at 37-74. On December 21, 2015, she issued a decision finding that Mr. Ammons retained the RFC to perform approximately 290,000 jobs in the national economy and was, therefore, not disabled under the Act from his June 14, 2010 alleged onset date through the date of her decision. *AR* at 12-35. Mr. Ammons responded by submitting an informal request for review of the ALJ's decision to the Appeals Council on December 17, 2015. *AR* at 36. After reviewing his case, the Appeals Council denied Mr. Ammons' request for review on November 18, 2016. *AR* at 1-4. As such, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

Mr. Ammons appealed the Administration's decision to this Court by filing a complaint on February 22, 2016. *AR* at 1072-1073; *see also Ammons v. Colvin*, CV 17-0094 CG, Doc. 1. After Mr. Ammons filed his opening brief, the Commissioner filed an unopposed motion to remand pursuant to sentence four of 42 U.S.C. § 405(g) on October 2, 2017. *See AR* at 1077; *see also Ammons*, CV 17-0094 CG, Doc. 18. This Court, Magistrate Judge Garza presiding, granted the Commissioner's unopposed motion and entered final judgment remanding Mr. Ammons' claims for further proceedings on October 3, 2017. *AR* at 1074-1075. The Appeals Council then remanded the case to the ALJ on January 4, 2018 to, among other things, identify the incidence of appropriate jobs in the national economy given Mr. Ammons' RFC and to "resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p)." *AR* at 515-516.

The ALJ held a new hearing on Mr. Ammons' remanded claim on July 1, 2018, at which Mr. Ammons, his psychologist Clifford Morgan Jr., Ph.D., and vocational expert ("VE") Leslie White testified. *See AR* at 986-1041. Pertinent here, Mr. Ammons confirmed that he was amending his alleged onset date to January 9, 2012, and was requesting a closed period of disability, ending on September 30, 2017. *See AR* at 975, 991. After the hearing, the ALJ issued a second decision on August 30, 2018, in which she found that Mr. Ammons retained the RFC to perform "jobs that exist[ed] in significant numbers in the national economy" during his period of alleged disability. *AR* at 974. Thus, she concluded that he was not "under a disability, as defined in the Social Security Act … from his amended alleged onset date of January 9, 2012 through September 30, 2017[,]" and is not entitled to benefits for his closed period of disability. *AR* at 975-976. The Appeals Council declined to assume jurisdiction over Mr. Ammons' claims; therefore, the ALJ's decision

became the new final decision of the Commissioner. *See* 20 C.F.R. §§ 404.984(d), 416.1484(d). Mr. Ammons filed his Complaint initiating this appeal on December 21, 2018. [*See* Doc. 1]. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

## III.   THE COMMISSIONER'S FINAL DECISION

A claimant seeking social security benefits under the Act must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(l)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[3]

At Step One of the sequential evaluation process the ALJ found that Mr. Ammons did not engage in substantial gainful activity from January 9, 2012 through September 30, 2017. *AR* at 961. At Step Two, the ALJ determined that Mr. Ammons has the following severe impairments: epilepsy; arthritis of the ankles; obstructive sleep apnea; and major depressive disorder. *AR* at 961. At Step Three, the ALJ concluded that Mr. Ammons' impairments do not meet or medically equal

---

[3] The Tenth Circuit summarized these steps in *Allman v. Colvin*, 813 F.3d 1326, 1333 n. l (10th Cir. 2016):

> At step one, the ALJ must determine whether a claimant presently is engaged in a substantially gainful activity. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). If not, the ALJ then decides whether the claimant has a medically severe impairment at step two. *Id.* If so, at step three, the ALJ determines whether the impairment is "equivalent to a condition 'listed in the appendix of the relevant disability regulations.'" *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). Absent a match in the listings, the ALJ must decide at step four whether the claimant's impairment prevents [her] from performing [her] past relevant work. *Id.* Even if so, the ALJ must determine at step five whether the claimant has the RFC to "perform other work in the national economy." *Id.*

the regulatory "listings." *AR* at 962-963. Mr. Ammons does not challenge the ALJ's findings at Steps One through Three in this appeal. [*See generally* Docs. 14, 20].

When a claimant does not meet a listed impairment at Step Three the ALJ must determine the extent to which he remains able to work (his RFC), before proceeding to identify jobs he can still do at Steps Four and Five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). "RFC is not the least an individual can do despite his or her limitations or restrictions, but the most." SSR 96-8p, 1996 WL 374184, at *1. In this case, the ALJ determined that Mr. Ammons retains the RFC to:

> perform less than a full range of sedentary work … as follows: [he] should not be required to drive as part of his job duties; [he] is limited to simple, work-related decisions with few workplace changes; [he] should have no exposure to hazardous conditions, including unprotected heights, dangerous moving machinery, or ladders or scaffolds; [he] can occasionally climb stairs, balance and stoop but never kneel, crouch, or crawl; [he] can have superficial interactions with the general public but should not be required to work at a production rate pace or perform tandem tasks.

*AR* at 964. Employing this RFC at Steps Four and Five, and relying on Mr. Ammons' age, work history, education, testimony, and the testimony of VE White, the ALJ determined that Mr. Ammons could not have performed his past relevant work as a coach or sales representative during the closed period at issue. *AR* at 973. However, the ALJ concluded that there were three jobs that existed in "significant numbers in the national economy" that Mr. Ammons could have performed during that time. *AR* at 974-975. Specifically, the ALJ determined that Mr. Ammons could have worked during his closed period of alleged disability as an addresser (DOT # 209.587-010; 5,600 jobs in the national economy), a document preparer (DOT # 249.587-018; 47,000 jobs in the national economy), or a ticket checker (DOT # 219.587-010; 4,000 jobs in the national economy). *AR* at 974. As, such, the ALJ denied Mr. Ammons benefits under the Act. *AR* at 976.

## IV.   LEGAL STANDARDS

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). "[T]he agency's 'failure to apply the correct legal standards, or to show [the Court] that it has done so' is 'grounds for reversal.'" *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 640 (10th Cir. 2018) (unpublished) (quoting *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

## V.   ANALYSIS

In addition to the Step Five errors requiring remand, Mr. Ammons argues that the ALJ improperly picked and chose among the moderate limitations assessed by examining psychologist Eligio Padilla, Ph.D., when formulating his RFC [*See* Doc. 14, pp. 20-26]. Because the Court concludes that the ALJ erred as a matter of law by failing to resolve an apparent conflict between Mr. Ammons' RFC and two of the jobs identified by the VE, and failed to support her conclusion at Step Five with substantial evidence by identifying a significant number of national jobs within Mr. Ammons' RFC or analyzing his ability to access the jobs she relied on, the Court will not address his RFC/weight-based arguments "because they may be affected [or rendered moot] by the [Administration]'s treatment of [his] case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bryant*, 2018 WL 6133387, at *5 (citing *Watkins* for this proposition).

**A. The ALJ failed to identify and resolve an apparent conflict between the GED reasoning levels of two of the jobs identified by the VE, leaving too few jobs to meet the Administration's burden at Step Five.**

As noted, the ALJ concluded that Mr. Ammons retains the RFC to work as an addresser (DOT # 209.587-010; 5,600 jobs in the national economy), a document preparer (DOT # 249.587-018; 47,000 jobs in the national economy), or a ticket checker (DOT # 219.587-010; 4,000 jobs in the national economy). As set forth in the DOT, an addresser "[a]ddresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing[; m]ay [also] sort mail." DOT # 209.587-010, 1991 WL 671797. A document preparer

> [p]repares documents, such as brochures, pamphlets, and catalogs, for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices[; c]uts documents into individual pages of standard microfilming size and format when allowed by margin space, using paper cutter or razor knife[; r]eproduces document pages as necessary to improve clarity or to reduce one or more pages into single page of standard microfilming size, using photocopying machine. Stamps standard symbols on pages or inserts instruction cards between pages of material to notify [a microfilm camera operator] of special handling, such as manual repositioning, during microfilming[; p]repares cover sheet and document folder for material and index card for company files indicating information, such as firm name and address, product category, and index code, to identify material[; and, i]nserts material to be filmed in document folder and files folder for processing according to index code and filming priority schedule.

DOT # 249.587-018, 1991 WL 672349. Finally, a ticket checker "[c]ounts and records number of parimutuel tickets cashed at race track to verify records of cashiers[, c]ompares totals with entries on daily balance sheet[, c]ompares each ticket with sample or examines tickets under fluorescent light to verify validity of tickets[, and r]eports discrepancies." DOT # 219.587-010, 1991 WL 671989. Mr. Ammons argues that his RFC, which, among other things, limits him to "simple, work-related decisions with few workplace changes" is inconsistent with the document preparer and ticket checker positions, both of which have GED reasoning levels[4] of three (3). [*See* Doc. 14,

---

[4] As noted above, "GED" stands for "General Educational Development" and "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." DOT App. C, § III, 191 WL

p. 17]. Mr. Ammons is correct that both jobs require level three (3) reasoning, which requires a worker to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form[; and, to] "[d]eal with problems involving several concrete variables in or from standardized situations." *See* DOT # 249.587-018, 1991 WL 672349; DOT # 219.587-010, 1991 WL 671989. And, ultimately, the Court agrees with Mr. Ammons that level three (3) reasoning is inconsistent with his RFC. Therefore, the ALJ was required to resolve this inconsistency before relying on these two jobs to support her decision to deny benefits, and her failure to do so is reversible error.

In *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999), the Tenth Circuit held "that the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." Closely following that decision, the Commissioner issued SSR 00-4p, which discusses the "Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions." SSR 00-4p, 2000 WL 1898704. Pursuant to SSR 00-4p, "[w]hen there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled." *Id.* at *2. "Questioning a vocational expert about the source of his opinion and any deviations from a publication recognized as authoritative by the agency's own regulations falls within [the ALJ's] duty [to develop the record]." *Haddock*, 196 F.3d at 1091; *see also* SSR 00-4p, 2000 WL 1898704 at *2 ("At the hearings level, as part of the adjudicator's duty

---

688702. "The GED Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development." *Id.* Pertinent to this case, there are 6 levels of Reasoning Development, with 1 representing the lowest level and 6 representing the highest. *Id.*

to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency."). This is an "affirmative responsibility" in which the ALJ must both "[a]sk the VE or VS if the evidence he or she has provided conflicts with the information provided in the DOT; and [i]f the VE's or VS's evidence appears to conflict with the DOT, … obtain a reasonable explanation for the apparent conflict." SSR 00-4p, 2000 WL 1898704 at *4.

The Tenth Circuit extended *Haddock* and SSR 00-4p's principles to GED reasoning levels in *Hackett v. Barnhart*, 395 F.3d 1168, 1175-1176 (10th Cir. 2005). There, as here, the claimant argued that her RFC, as formulated by the ALJ below, was inconsistent with jobs requiring level three (3) reasoning. *Id.* The Tenth Circuit agreed, holding that an apparent conflict existed between the claimant's RFC, which found that she "retain[ed] the attention, concentration, persistence and pace levels required for simple and routine work tasks[,]" and jobs requiring level three (3) reasoning. *Id.* In so finding, the court noted that level two (2) reasoning appeared more consistent with the claimant's RFC. *Id.* ("We note that level-two reasoning requires the worker to 'apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations.' … This level-two reasoning appears more consistent with Plaintiff's RFC.") (quoting DOT, Vol. II at 1011). The court accordingly reversed and remanded, even though the claimant was represented by counsel before the ALJ and could very well have raised the apparent conflict at her hearing, thereby permitting the ALJ to explain or change his ruling without the need for litigation. *Id.*

Here, the ALJ failed to comply with SSR 00-4p, and in doing so, she erred. While the ALJ asked VE White if she was "aware" that her testimony needed "to be in accord with" the DOT and its companion publications, *see AR* at 1033, she failed to identify the apparent conflict between Mr. Ammons' RFC, which limited him to "simple, work-related decisions with few workplace

changes[,]" *AR* at 964, and the document preparer and ticket checker positions, both which require level three (3) reasoning. *See* DOT # 249.587-018, 1991 WL 672349; DOT # 219.587-010, 1991 WL 671989. As such, the result in this case appears foreordained by the *Hackett* court's conclusion that an RFC limiting the mental demands on a claimant to "simple" tasks "seems inconsistent with the demands of level-three reasoning." *See Hackett*, 395 F.3d at 1176 (citing *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997), which rejected the contention that "a claimant limited to following only simple instructions could engage in the full range of sedentary work because many unskilled jobs in that category require reasoning levels of *two* or higher." (emphasis added)).

Nonetheless, the Commissioner attempts to distinguish *Hackett*, arguing that the court "did not set a categorical rule that a GED reasoning level of three is always inconsistent with an RFC for simple work tasks." [Doc. 19, p. 7 (citing *Biestek v. Berryhill*, 139 S.Ct. 1148, 1157 (2019), in support of the proposition that the ALJ did not err because each case should be viewed individually, rather than through the lens of a categorical rule, since a case-by-case approach "is more consistent with the deferential substantial evidence standard of review that applies in Social Security cases.").].[5] The Court disagrees with the Commissioner's interpretation of *Hackett*. The Tenth Circuit explicitly reversed the final decision in that case because it identified an "apparent conflict between [the claimant's] inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the VE." *Hackett*, 395 F.3d at 1176. In other words, for all intents and purposes, *Hackett* states a categorical rule which is directly applicable here.

---

[5] The Court has no quarrel with the Commissioner's citation to *Biestek*, as it is an accurate statement of the applicable standard of review. However, the issue presented here turns on whether the ALJ committed a *legal* error, not a *factual* one, which would be reviewed under the substantial evidence standard. Thus, the Commissioner's position that the Court should review the ALJ's failure to identify an apparent conflict here for substantial evidence is inapposite.

Moreover, this Court recently examined this issue in another case and, in doing so, became aware of further support for the conclusion that level three (3) reasoning is inconsistent with an RFC limiting a claimant to simple tasks. *See Salazar Trujillo v. Saul*, CV 18-1134 JHR, Doc. 25 (unpublished). As was mentioned in the *Salazar Trujillo* decision, in *Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016) (unpublished), the Tenth Circuit relied on the eighth circuit's decision in *Lucy v. Chater* (which it also relied on in *Hackett*) for the proposition that "[w]hile we have not spoken to whether a limitation to simple and routine work tasks is analogous to a limitation to carrying out simple instructions, the Eighth Circuit has held that a limitation to simple instructions is inconsistent with both level-two and level-three reasoning." *Paulek*, 662 F. App'x at 594 (citing *Lucy*, 113 F.3d at 909). In other words, contrary to the Commissioner's position, the Tenth Circuit appears to have adopted, and has as recently as 2016 applied, a general rule requiring an explanation by the Administration whenever a claimant who is limited to "simple" tasks is paired with level three (3) jobs. *Id.*[6] Despite the VE's promise to explain any conflicts between Mr. Ammons' RFC and the DOT descriptions of two of the jobs she identified, there was no explanation in this case. *See AR* at 1033-1037. Therefore, the ALJ erred. The real question is whether this error harmed Mr. Ammons.

If the ALJ had relied on a job that existed by itself in "significant numbers" in the national economy, then the ALJ's failure to identify and explain the conflict between Mr. Ammons' RFC and the document preparer and ticket checker positions would be considered harmless and the Court would, ordinarily, affirm. *See Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) ("Even assuming without deciding that [the claimant] is unable to work as a sales attendant or

---

[6] Moreover, in *Thomas v. Berryhill*, 916 F.3d 307, 314 (4th Cir. 2019), the Fourth Circuit concluded that an apparent conflict existed where the claimant's RFC was limited to only short and simple instructions and the jobs relied on by the Administration required level two (2) reasoning. *Id.* While the court was careful not to announce a "categorical rule," it made clear that a conflict requiring remand was apparent. *Id.*

office helper, there is no colorable dispute that substantial record evidence supports the ALJ's conclusion that he can work as a rental clerk. Accordingly, the only question we must decide is whether or not that job exists in significant enough numbers."). However, this case differs greatly from *Raymond*, where the claimant could not "dispute that 1.34 million rental clerk jobs in the national economy is a legally 'significant' number," *id.*, because, when the two jobs Mr. Ammons cannot do are excluded from the analysis, only 5,600 national jobs remain. The Commissioner does not argue, nor would the Court find, that 5,600 jobs in the national economy is "significant." *See, e.g.*, *Figueroa v. Saul*, CV 18-0885 JHR, 2019 WL 3766184 (D.N.M. Aug. 9, 2019) (Observing that 152,000 is the lowest number of jobs the Tenth Circuit has determined to be "significant," enough to warrant the application of harmless error and concluding that the 56,000 jobs at issue in that case were not "significant" enough to warrant the application of harmless error) (citing *Evans v. Colvin*, 640 F. App'x 731, 736 (10th Cir. 2016) (unpublished)); *see also Laney v. Berryhill*, CV 17-1062 JHR, 2019 WL 586660 (D.N.M. Feb. 12, 2019) (Same result but as applied to 43,000 jobs.); *Roybal v. Berryhill*, CV 17-1045 JHR, 2019 WL 318387 (D.N.M. Jan. 24, 2019) (42,724 jobs.); *Crockett v. Berryhill*, CV 17-0955 JHR, 2018 WL 6250602 (D.N.M. Nov. 29, 2018) (6,400 jobs.); *Brandenburg v. Berryhill*, CV 17-0507 JB/JHR, Doc. 27 (D.N.M. May 25, 2018), *report and recommendation adopted*, 2018 WL 3062591 (D.N.M. June 21, 2018) (5,200 jobs.). Rather, as stated in this Court's past rulings, an ALJ's decision that fails to identify a "significant" number of jobs in the national economy that a claimant can perform is not supported by substantial evidence unless the factors stated in *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992), are applied to the claimant's circumstances.

The Commissioner does not argue that the ALJ considered the *Trimiar* factors when denying benefits in this case (nor could he, since two of the jobs the ALJ identified and relied on

for the total number of jobs conflict with Mr. Ammons' RFC). [*See generally* Doc. 19]. As the

Tenth Circuit stated in *Allen v. Barnhart*, 357 F.3d 1140 (10th Cir. 2004):

> *Trimiar's* insistence on an antecedent exercise of judgment by the ALJ is not novel.
> On the contrary, it is consistent with, if not compelled by, our broader recognition
> that as a court acting within the confines of its administrative review authority, we
> are empowered only to 'review the ALJ's decision for substantial evidence' and,
> accordingly, 'we are not in a position to draw factual conclusions on behalf of the
> ALJ….' Unless we could hold as a matter of law—and thus not fact, which is
> beyond our purview—that one hundred is so large a number as to conclusively
> establish the requisite numerical significance, *Drapeau* precludes affirmance here
> just as *Trimiar* does.") (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th
> Cir. 2001)).

*Id.* at 1144-1145. Accordingly, because the ALJ failed to resolve the apparent conflict between

Mr. Ammons' RFC and two of the jobs she identified, and because the remaining number of jobs

(5,600) is not "significant" as a matter of law, the Court must remand this case to the

Administration to either perform a *Trimiar* analysis in light of the 5,600 jobs available to Mr.

Ammons, or remand his claims for further factual development and reexamination by an ALJ.

    **B. Even if the Court ignored the ALJ's failure to resolve the apparent conflict
described above, the total number of jobs she identified (56,600) was not
"significant" as a matter of law as required to meet the Administration's burden
at Step Five absent a proper *Trimiar* analysis.**

The Court will not rehash its analysis. However, given the number of claims it has

remanded on this issue (summarized in the above string-citation), it finds it necessary to further

explain why it would still remand this case even if the ALJ had identified 56,600 jobs that are

consistent with Mr. Ammons' RFC.

In *Trimiar*, 966 F.2d at 1330, the Tenth Circuit explicitly stated that "[an] [administrative

law] judge should consider many criteria in determining whether work exists in significant

numbers[.]" This principle has been tempered over time, and an ALJ is not required to perform a

*Trimiar* analysis where the number of national jobs at issue is "much larger" than the 650 to 900

regional jobs at issue there. *See Raymond*, 621 F.3d at 1274. Thus, while the Tenth Circuit "has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number[,]'" *Trimiar*, 966 F.2d at 1330, it has indicated that the Commissioner's final decision should be affirmed as harmless where an ALJ identifies at least 152,000 jobs that are consistent with a claimant's RFC. *See Evans*, 640 F. App'x at 736 ("As *Trimiar* pointed out, there is no bright-line answer to how many jobs are enough for a court to say, as a matter of law, that the number is significant, but the number appears to be somewhere between 100, the number of jobs in *Allen* that we refused to consider significant for harmless-error purposes, and 152,000, the lowest number of jobs we have considered (in *Stokes*[ *v. Astrue*, 274 F. App'x 675 (10th Cir. 2008) (unpublished),] to be sufficient so far for application of harmless error.").

Unfortunately for the Commissioner, even the total number of jobs identified by the ALJ in this case (56,600) is far lower than the 152,000 accepted by the Tenth Circuit as "significant" as a matter of law. Thus, even if she hadn't erred as described above, the ALJ was required to conduct a *Trimiar* analysis in this case, which she did not. *See AR* at 974-975. Additionally, in light of its previous decisions, this Court would not conclude that 56,600 jobs is "significant" as a matter of law, even if the Commissioner had made that argument. *See, e.g.*, *Laney*, 2019 WL 586660, at *1; *Roybal*, 2019 WL 318387, at *4.

*Laney* and *Roybal* followed two other cases where this Court declined to find low numbers of jobs in the national economy to be "significant" as a matter of law where the ALJ failed to consider the *Trimiar* factors and make that factual finding in their decisions. *See Crockett*, 2018 WL 6250602; *Brandenburg*, CV 17-0507 JB/JHR, Doc. 27, *report and recommendation adopted*, 2018 WL 3062591. Thus, the Court is bound not only by its interpretation of binding precedent, but also by the principles of horizontal and vertical stare decisis. *See* Black's Law Dictionary, 710

(Fourth Pocket Ed. 2011) (describing horizontal stare decisis as "[t]he doctrine that a court … must adhere to its own prior decisions, unless it finds compelling reasons to overrule itself[,]" and vertical stare decisis as the doctrine that a court must strictly follow the decisions of higher courts in its jurisdiction.). The Commissioner has not given the Court reason to alter its analysis in this case.

As the Court has stated previously, the pertinent regulation does not permit an ALJ to rely on "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [a claimant] live[s.]" *See* 20 C.F.R. §§ 404.1566(b), 416.966(b) ("Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered work which exists in the national economy."). Thus, an ALJ must evaluate each case on its individual merits to determine whether work exists in significant numbers in the national economy as applied to a given claimant's factual circumstances. *Trimiar*, 966 F.2d at 1330. An ALJ should consider the "intrinsic" effects of a claimant's impairments when determining whether a certain number of jobs is "significant," "because they prevent the claimant from *accessing* certain jobs in the local or national economy." *Taskila v. Commissioner of Social Security*, 819 F. 3d 902, 906 (6th Cir. 2016). Thus, an ALJ must consider certain factors when determining whether the number of jobs is significant, including: "the level of the claimant's disability; the reliability of the vocational expert's testimony; the distance the claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the type and availability of such work, and so on." *Trimiar*, 966 F.2d at 1330 (quoting *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988), in turn quoting *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir.1988)).

It is undisputed that the ALJ did not complete a *Trimiar* analysis as to the 56,600 jobs she relied on to deny Mr. Ammons benefits. This is clear error. *See Allen*, 357 F.3d at 1145. Therefore,

"because the ALJ failed to evaluate the *Trimiar* factors and make specific factual findings regarding the numerical significance requirement, [the Court] cannot properly review this issue[,]" *Rhodes v. Barnhart*, 117 F. App'x 622, 532 (10th Cir. 2004) (unpublished); *see also Allen*, 357 F.3d at 1144, and the Commissioner's final decision must be reversed.

### C. The Court will not Order the Administration to immediately award Mr. Ammons benefits because further factual development is necessary in this case and it may still reasonably conclude that Mr. Ammons is not disabled.

Mr. Ammons asks the Court to Order the Administration to immediately award him benefits because, he argues, "further fact finding would serve no useful purpose[,]" his claims are for a closed period of disability, the record supports a finding of disability, the ALJ failed to follow the regulations in denying his claims, and his claims have been pending for more than six (6) years. [*See* Doc. 14, pp. 26-27 (citations omitted)]. Whether to award benefits when remanding a case is a matter of this Court's discretion. *See Winick v. Colvin*, 674 F. App'x 816, 822 (10th Cir. 2017) (quoting *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006)). In exercising this discretion the Court considers factors such as "the length of time the matter has been pending and whether or not given the available evidence, remand for additional fact-finding would serve any useful purpose but would merely delay the receipt of benefits." *Id.* (internal quotation marks omitted).

While the Court sympathizes with Mr. Ammons, it finds that further fact-finding would serve a useful purpose (and could ostensibly result in a supported denial of benefits) in this case. Therefore, the Court will not award benefits but will instead remand the case for further analysis by the Administration. In so concluding the Court notes that the Tenth Circuit has denied an immediate award of benefits in a case "pending nearly ten years" which "required numerous remands for further agency decision-making" because "an eventual award of benefits [was] not foreordained on" the record before it. *See Winick*, 674 F. App'x at 822. The same is true here.

## VI.    <u>CONCLUSION</u>

SSR 00-4p required the ALJ in this case to ascertain whether the jobs she relied upon to deny Mr. Ammons benefits were consistent with his RFC. Additionally, *Trimiar* required the ALJ to conduct a significant numbers inquiry to support her decision with substantial evidence because she did not identify enough jobs to deny benefits as a matter of law. "The Tenth Circuit has emphasized that 'the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation' and, as such, 'the evaluation should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation.'" *Padilla v. Berryhill*, CV 16-0106 KK, 2017 WL 3412089, at *11 (D.N.M. Mar. 28, 2017) (quoting *Allen*, 357 F.3d at 1144). Therefore, because the ALJ failed to resolve an apparent conflict between two of the jobs she relied on and Mr. Ammons' RFC, and because she failed to identify jobs existing in "significant numbers" in the national economy that Mr. Ammons can do despite his limitations, this Court has no choice but to reverse the Commissioner's final decision and remand this case to the Administration for further proceedings.

Wherefore, **IT IS THEREFORE ORDERED** that Plaintiff Shawn Ammons' Motion to Reverse and Remand for a Rehearing with Supportive Memorandum [Doc. 14], is **GRANTED IN PART**. The Commissioner's Final Decision is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this decision.

_____
Jerry H. Ritter
U.S. Magistrate Judge
Presiding by Consent